## Wright *v.* Hanna, Appellant.

*Contracts—Novation—Promissory note.*

The essentials of novation are the displacement and extinction of a prior contract, the substitution of a new contract, a sufficient consideration therefor, and consent of the parties thereto.

Where a person receives from a decedent promissory notes with knowledge that they were impressed with a contractual obligation of the decedent, and he accepts renewal notes with the understanding that such notes are to be in substitution of the original note and that they are made only for the purpose of renewal and to have the name of the legatee appear as payee instead of the name of the decedent, no element of novation exists as to the renewal notes.

*Evidence—Witness—Competency of witness—Party dead—Acts of May 23, 1887, P. L. 158, and June 11, 1891, P. L. 287.*

Where one of the parties to an agreement is dead, and no living witness has been called to testify in regard to any matter relative to the agreement that occurred prior to the death of the decedent, the surviving party is not competent to testify as to what took place prior thereto.

*Promissory notes—Interest—Rate of interest.*

Where the interest on a promissory note is fixed at less than six per cent

"from date until paid," such rate applies up to maturity of the note, and the words "until paid," relate to such maturity, and thereafter the legal rate of six per cent will prevail.

Argued Oct. 28, 1904. Appeal, No. 151, Oct. T., 1904, by defendant, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1900, No. 679, on verdict for plaintiff in-case of Harry T. Wright v. J. Hanna. Before MITCHELL, C. J., DEAN, FELL, BROWN, POTTER and THOMPSON, JJ. Reversed.

Assumpsit upon six promissory notes. Before FRAZIER, P. J. The form of the notes sued upon was as follows :

" $1,000.00.          STERLING, KANSAS, January 1, 1896.

" On or before the first day of June, 1897, I or we, or either of us, promise to pay to the order of Harry T. Wright, the sum of one thousand dollars, for value received, payable. . . . Kansas, with 4 per cent. interest, from date until paid, payable annually.

                                   " J. H. HANNA.

" Endorsed : HARRY T. WRIGHT."

Other facts appear by the opinion of the Supreme Court.

The court gave binding instructions for plaintiff.

Verdict and judgment of plaintiff for $6,843.33. Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence referred to in the opinion of the Supreme Court; (4) in giving binding instructions.

*James G. Hays*, with him *J. E. McKelvey*, for appellant, cited on the question of novation : Collins v. Busch, 191 Pa. 549; McCartney v. Kipp, 171 Pa. 644; Lauer v. Yetzer, 3 Pa. Superior Ct. 461.

Cited as to the competency of the witness : Rine v. Hall, 187 Pa. 264 ; Trickett on Witnesses, p. 128, sec. 137, and cases ; Strause v. Braunreuter, 4 Pa. Superior Ct. 263–266 ; Bank v. Henning, 171 Pa. 399 ; Hamill v. Royal Arcanum, 152 Pa. 537–542; Carpenter v. U. S. Life Ins. Co., 161 Pa. 9–15 ; Trickett on Witnesses, p. 133, sec. 142, 143.

*Wm. B. Rodgers*, with him *L. M. Plumer*, for appellee, cited

as to the novation: Shafer's Appeal, 99 Pa. 246 ; Parsons v. Tillman, 95 Ind. 452.

OPINION BY MR. JUSTICE THOMPSON, December 31, 1904:

The six promissory notes sued upon in this case were originally held by Harry T. Wright and his brother. Three were made payable to the order of appellee and three to that of his brother, who subsequently indorsed them to appellee. These brothers were the heirs at law of John Roney, deceased, who prior to March 22, 1892, had been in partnership in the hardware business with the appellant. In the settlement of the partnership account appellant gave to decedent promissory notes aggregating $5,000 and all but one of which were renewed during his lifetime. Notes so given or their renewals were received by appellee and his brother as such residuary legatees of John Roney, deceased, their uncle. In renewal of the notes so received, but including an additional sum borrowed and interest, ten notes, aggregating $7,000, were given to appellee and his brother, but of these, four, covering interest and the additional loan, were paid and left $5,000 due on the six notes in suit, the amount originally due in the partnership settlement. The scope of the agreement of that settlement was the continuance of the business by appellant and in order to accomplish such result it provided that appellant should not sell out the business or form a new partnership or mortgage the property; that if at maturity the original notes given in settlement could not be paid out of the business they should be renewed and that they should not be the cause of any embarrassment to the business ; that if at the expiration of five years from the dissolution of the partnership the appellant should not be able to pay them, then, or at any time thereafter, he might cancel them by deed of the syrup works land, it being one of the assets of the business, and that the contract should apply to any renewals of the notes. Appellant's business proved unsatisfactory and the five years for the payment of the notes expired in 1897 and after suit was brought appellant tendered a deed for the syrup works land, covenanted to be delivered, in cancelation of the notes given or their renewals. In 1896, when the renewal notes were given, the appellee and his brother, under the advice of counsel, refused to give up the original

notes, but retained them as evidence of the original indebtedness.    The defense was that the renewal notes sued upon were subject to the agreement in question and that appellee knew it and appellant having tendered a deed as provided in the agreement, and having kept the tender good at the trial, appellee was not entitled to recover.

To establish this defense appellant offered a letter dated December 19, 1895 (exhibit 21), written by appellant to L. P. Plummer, Esq., attorney for appellee, and also his reply designated as exhibit 22.    In this letter appellant writes: " I am willing to renew notes making them payable to the parties named and to make two notes, each for $1,000 payable the first of June or July of each year and the last two notes for $500.00 each, due in December of the last year.    I will make the rate of interest on each at four per cent, payable annually, so that the interest will be kept up and not accumulate.    I say four per cent because this was the rate agreed upon on the purchase of the half interest of Mr. Roney, and it is as much a part of the contract as the amount itself."

Again in the same letter he says: " If you could I am quite sure you would all be much better satisfied with the propositions herein contained than you are likely to be without knowing the facts.    It is specially hard such times as this to meet the obligations after the total loss of the part of the business out of which the obligations were to be met, and I say to you in good faith that I am going to pay the last cent of the obligations out of what remains if you will accept of the propositions herein contained."    He then states that the value of the stock on hand was not less than $10,000 and that he is willing to transfer it to any person whom they might designate.    Mr. Plummer's reply was that he had submitted this letter to the appellee and his brother, John D. Wright, and that they will accept the proposition upon the following conditions, namely : that appellant would assign a life insurance policy to them, pay in full back interest and that he will give certain notes bearing interest at the rate of four per cent.    In the postcript to this letter is added for the purpose of indicating how interest should be computed, a note for $2,000, a note for $4,000 and a note for $1,000 with the number of months interest due.    In the letter of John D. Wright, dated December 30, 1896, he writes to appellant: " In

regard to the original notes our legal adviser says we should hold them until renewal notes are paid, as they are the evidence of original debt." The various letters in evidence signed by Wright for Roney refer to the original notes in the agreement.

The purpose of the offer of the letter of December 29, 1895 (exhibit 21), and the reply thereto (exhibit 22) was to establish the fact that the notes sued upon were subject to the agreement that appellees knew it and that no novation was intended. They were clearly competent for this purpose and the learned trial judge erred in excluding them and having excluded them in giving binding instructions for the appellee. The essentials of novation are the displacement and extinction of the prior contract, the substitution of a new contract, a sufficient consideration therefor, and the consent of the parties thereto. If the appellee as a residuary legatee received the original notes, knowing they were impressed with the obligation contained in the agreement of partnership settlement, and retained them as such, if he received the notes in suit in renewal of them and accepted them as such, if appellant made them only for the purpose of renewal, if in fact they were practically a mere substitution of the name of appellee and his brother as residuary legatees as payees instead of that of decedent, a prima facie novation, as evidenced by the notes, would necessarily be swept away. If this be so, it follows that the letters, with the other proofs, were competent for the purpose of negativing an alleged novation.

Appellant was a competent witness as to what occurred subsequent to the death of John Roney, but not before, and the learned trial judge cannot be convicted of error in refusing to permit appellant to testify as to what took place previous to Roney's death. Appellant in the line of his defense that the notes were renewals and subject to the agreement, offered to prove " that he had performed all the contract, exhibit No. 1, made with John Roney, deceased."

In the Act of May 23, 1887, P. L. 158, it is provided that where any party to a thing or contract in action is dead and his right thereto or therein has passed by his own act or the act of law to a party who represents his interest, no surviving party can be a competent witness to any matter occurring before the death of such party, and under the Act of June 11,

1891, P. L. 287, he is made competent if, and only if, the relevant matter occurred between himself and another person who may be living at the time of the trial and may be competent to testify and who does so testify against such surviving or remaining party or if such relevant matter occurred in the presence or hearing of such other living or competent person. This act is construed in the case of Kauss v. Rohner, 172 Pa. 481, in which Mr. Justice FELL says:

"By the act of June 11, 1891, a surviving party is made competent to testify to any relevant matter which occurred before the death of the other party, if such matters occurred between himself and a person who is living and who testifies against him at the trial 'or if such relevant matter occurred in the presence or hearing of such other living and competent person.' To this should be added the construction given in Roth's Estate, 150 Pa. 261, that the surviving party is not competent unless the living witness has been called, and then to such matters only as he had testified to. The act applies to conversations or occurrences which took place in the presence or hearing of the witness who has testified and whom it is proposed to contradict: Thomas v. Miller, 165 Pa. 216; see also Krumrine v. Grenoble, 165 Pa. 98. The living witness to the conversation between the decedent and the plaintiff having testified, the plaintiff was competent to contradict him and to state her recollection of what was said."

In Montelius v. Montelius, 209 Pa. 541, Mr. Justice BROWN says:

"From Roth's Estate, 150 Pa. 261, decided in 1892, down to Rudolph v. Rudolph, 207 Pa. 339, we have uniformly held when it has been urged that the purpose of the act of 1891 is very broad, that its words have but one meaning, and that the lips of one who would have been incompetent before its passage are unsealed, only when its conditions of his competency arise on the trial." See also Shroyer v. Smith, 204 Pa. 310.

As the other party to the agreement, Mr. Roney, is dead, and no living witness was called to testify in regard to any matter relevant to it that occurred prior to his death, appellant was not competent to testify to what took place prior thereto.

It may be added, that it is but proper to say that where the

interest on a promissory note is fixed at less than six per cent, such rate applies up to maturity of the notes, and the words, until paid, relate to such maturity, and thereafter the legal rate of six per cent will prevail.

The third and fourth assignments of error are sustained, the judgment is reversed and a venire de novo is awarded.