## Guardian Bank and Trust Company Case.

Argued April 18, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

412

*H. Eugene Heine,* with him *Horace M. Barba,* Special Deputy Attorney General, *Oliver C. Cohen,* Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for appellant.

*William C. Ferguson, Jr.,* with him *Louis J. Goffman, I. I. Jamison* and *I. Emanuel Sauder,* for appellees.

OPINION BY MR. JUSTICE MAXEY, May 9, 1938:

On September 30, 1933, the then Secretary of Banking took possession of the Guardian Bank and Trust Company in accordance with the Act of May 15, 1933, P. L. 565, 71 PS 733, known as the "Department of Banking Code." The Secretary filed a third and partial account of his receivership on June 25, 1937, showing that all depositors had received the full amount of their deposit balances and that cash and other assets remained which he proposed to disburse in the following manner: First, to the payment of general claims; second, to the payment of interest on time deposits from the date of the receivership at a rate to be fixed by the court; third, to the payment of interest on demand deposits from the date of the receivership, at a rate to be fixed by the court; fourth, to the payment of interest

on general claims at the rate of 6% per annum; fifth, to the payment of stockholders in proportion to their holdings. Exceptions were filed by stockholders who contended that any surplus after the payment to depositors and general creditors should be paid over to the shareholders in proportion to their holdings of stock.

The foregoing method of distribution was suggested by the Secretary, the appellant here, although he merely occupied the position of stakeholder. The matter was submitted to the Court of Common Pleas by counsel representing stockholders, general creditors and depositors. The court in its adjudication and decree nisi decided that the balance of cash, which was in excess of $4,000, in the hands of the Secretary, less a necessary reserve for further liquidation expenses, should be paid to the stockholders in proportion to the number of shares held by them. The Secretary filed exceptions to the decree nisi and the court filed an amended decree nisi on January 26, 1938, changing the original decree so as to provide that general creditors should be paid the amount of their claims, such provision having been inadvertently omitted from the original decree, and providing that the remaining assets in the hands of the Receiver should be paid to shareholders pro rata and ordering that a schedule of distribution be filed. The Secretary then withdrew the exceptions to the decree nisi of January 14th and filed a schedule of distribution in accordance with the amended decree nisi; and on February 8, 1938, filed exceptions to the amended decree nisi and to the schedule of distribution. On February 11, 1938, the court confirmed the account absolutely, approved the schedule of distribution, and dismissed the exceptions of the Secretary. On the same day, the Secretary filed exceptions to the final order of the court. The bill was "sealed" and this appeal taken.

The question involved, as stated by the appellant, is: "Where the Secretary of Banking, in possession of a closed trust company as receiver, pays depositors the

principal amounts of their deposit balances in full, and pays general creditors the principal amounts of their claims in full, is a surplus in his hands to be distributed to stockholders of the trust company in preference to its use for the payment of interest to depositors and general creditors?"

Appellant's contention is that interest should be paid on deposits of both classes, i. e., time deposits and demand deposits, at the rate of 6%, from the date of the receivership, before any payment is made to general creditors and to stockholders. It is contended, on the other hand, that the depositors and general creditors are entitled to no interest since the closing of the bank and that the funds now in the hands of the Secretary should be applied first to the payment of general claims without interest, and that the balance should be distributed among stockholders pro rata.

Six per cent interest on deposits since the date of receivership will amount to more than $14,000, and if this interest is paid the available funds will be exhausted. The court below held that the question was determined by section 1011 of the Banking Code of 1933, supra, which provides as follows: "The following shall be the order followed by the Secretary in the distribution, pursuant to the provisions of this act, of the assets of any institution . . . which he as receiver is liquidating:

"First. [Secretary's expenditures as receiver].

"Second. [Fees or other debt owing to the department for examinations, etc.].

"Third. Any deposit and any interest due thereon which has been, or according to the by-laws or rules and regulations of the institution should have been, credited to such deposit, prior to the date of the taking of possession of the institution by the secretary as receiver. . . .

"Fourth. . . . Any claim of a creditor of the institution, not listed under any other category in this section.

"Fifth. Any part of the amounts paid by shareholders, after an assessment upon them by the secretary . . . which has proved unnecessary to pay in full all depositors or other creditors of the institution. . . .

"Sixth. Any moneys of the institution which still remain in the hands of the secretary shall be paid to shareholders, in proportion to the number of shares held by them respectively.

"Seventh. Any unliquidated assets, to trustees for shareholders appointed pursuant to the provisions of this act."

After quoting this section, the court below said: ". . . there is an express inclusion of interest on deposits, when payable by regulations of the bank, down to the date of the receivership. We think the inclusion of this one item of interest in the statute evidences a legislative intent that no other interest should be payable." We adopt this view.

The Department of Banking Code is comprehensive in character. It defines the rights and prescribes the duties of the Banking Department. The Code is not an insolvency act; its provisions so indicate. This being the fact, the citations of decisions of federal and state courts in cases of insolvency are inapposite. The problem presented by this record is a simple one of distribution under a statutory mandate as to relative priorities. The Secretary of Banking cites the case of *Richmond v. Irons*, 121 U. S. 27, in support of the contention that interest should be paid to depositors from September 30, 1933, the date the bank closed, to the dates their final dividends were received. In the case cited, the Supreme Court of the United States said, in discussing the liability of stockholders of a bank organized under the National Banking Act and which had suspended payment and business and gone into voluntary liquidation in pursuance of section 44 of the National Banking Law (page 64) : "The first question is whether interest upon the debts of the bank should be allowed as against the stock-

holders from the date of the suspension. As the liability of the shareholder is for the contracts, debts, and engagements of the bank, we see no reason to deny to the creditor as against the shareholder the same right to recover interest which, according to the nature of the contract or debt, would exist as against the bank itself; of course, not in excess of the maximum liability as fixed by the statute." In that case the court was discussing the extent of a statutory liability, and not being bound by any statute on the subject as to the beginning of interest computation and its duration, it was at liberty to apply the orthodox rule that interest is payable from the time it becomes the duty of the debtor to discharge the debt. Interest is, as a general rule, demandable from the date money is due: *Minard v. Beans,* 64 Pa. 411. This court said in *Kelsey v. Murphy,* 30 Pa. 340: "Interest is a legal and uniform rate of damages allowed in the absence of any express contract, when payment is withheld after it becomes the duty of the debtor to discharge the debt." Just as "an express contract" may modify the rate and term of interest, so may a statute which expresses the sovereign will modify both rate and term. In the instant case the statute, i. e., the Department of Banking Code, paragraph 3 of section 1011, page 614 of the Laws of Pennsylvania for 1933, gives, as already noted, the depositor preference over the shareholders *only* to the extent of his "deposit and any interest due thereon which has been or . . . should have been credited to such deposit, *prior to the date of the taking of possession of the institution by the secretary as receiver. . . .*" (Italics supplied.) This language is explicit. The court below followed it.

The order is affirmed.