346

## In re Bank of Wesleyville

*Robert J. Firman* and *William W. Knox*, for petitioners.

EVANS, P. J., March 26, 1946.—This matter is before the court on a petition for authority to distribute the assets of the Bank of Wesleyville which remained after the ninth and final account of the liquidating trustees had been audited and confirmed. The depositors have received 100 percent of their claims without interest. Several questions pertaining to substantive rights and methods of distribution have been presented for our determination.

The first is that of attorney fees for Robert J. Firman, who acted as attorney for the liquidating trustees throughout the liquidation. From the testimony taken at the hearing in this matter, we find that the amount claimed is for general services to

the liquidating trustees, including consultations, filing of accounts, handling of minor liquidation questions, including the hearing on the petition for a decree of final distribution. F. W. Sapper, one of the liquidating trustees, testified that in his opinion the amount claimed is reasonable. With that we agree and conclude that it should be allowed.

The second question pertains to the right of depositors to interest for such period as their deposits, during the liquidation, remain unpaid. Had this bank been liquidated by the Secretary of Banking no interest would have been payable after the date when possession was taken by said secretary: Guardian Bank and Trust Company Case, 330 Pa. 411. However, the Secretary of Banking, who, under the provisions of the Department of Banking Code of May 15, 1933, P. L. 565, had held possession of the institution from September 30, 1933, until February 28, 1934, turned over his duties to liquidating trustees in accordance with the provisions of article VI, sec. 608, of said act.

Inasmuch as the right to interest ceased when the Secretary of Banking was in possession and no provision for the revival of a right to interest was included in the plan for liquidation by trustees, we, in the absence of authority to the contrary and under the equities as they appear in this case, conclude that the rights of the depositors should remain the same as they were while the institution was in the hands of the Secretary of Banking, i. e., to receive a proportionate share in the distribution of the assets of the bank until they receive 100 percent of their claims without interest.

The next matter for consideration is the disposition of unclaimed dividends amounting at the present time to $1,956.09. The testimony taken at the hearing shows that some of the depositors who, for some reason, have failed to cash their dividend checks, are

known to be alive and in this community but the whereabouts of others is unknown. Dividends Nos. 1, 2 and 3 were payable on or prior to July 29, 1937, and any of these which now remain unclaimed may be the subject of escheat to the Commonwealth of Pennsylvania: Act of May 16, 1935, P. L. 195, 27 PS §282. A letter from the Department of Revenue attached to petitioner's brief cites Link's Estate (No. 1) 319 Pa. 513, as authority for the proposition that this court may order these dividends paid to the Commonwealth of Pennsylvania without requiring that the Auditor General proceed according to the provisions of this act. The case cited is authority for the court to direct payment of funds to the State Treasurer where there are no claimants or where those claiming are held to have no rights. Such is not the situation here. There are claimants to whom dividends are payable until such time as the Auditor General prosecutes escheat proceedings. In our opinion, therefore, all unclaimed dividends should be turned over to a trustee to whom creditors' claims can be properly made at any time before the Auditor General shall claim and secure the fund by way of escheat.

The next question concerns the right of F. W. Sapper, B. F. Chambers and Robert Bowman to have satisfied certain mortgages pledged by them to cover an impairment of surplus in the amount of $23,536.52, as determined by the Secretary of Banking prior to February 21, 1931. At that time the capital account of the bank was unimpaired, and since the depositors for whom the surplus was security have received their deposits in full the collateral pledged for their benefit should be released. This conclusion also applies to the shares of stock pledged by Glen Walbridge under identical circumstances and for the same purpose.

The next matter for determination is the right of F. W. Sapper to reimbursement for funds he ad-

vanced by way of securities to the Secretary of Banking in the year 1930, which securities, by order of this court, he was permitted to withdraw upon substitution of cash in an amount equal to the surplus impairment, determined by the Secretary of Banking in 1931 to be $23,536.52. The object of the pledge, i. e., the protection of the depositors, having been accomplished by their payment in full, in our opinion an equitable lien arose as against any remaining assets in favor of F. W. Sapper whose pledged assets were used to make such payment in full possible. . . .