Miller, Appellant, *v.* Reading.

Argued January 11, 1952. Before DREW, C. J.,
STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Charles H. Weidner,* with him *Stevens & Lee,* for appellant.

*C. Wilson Austin,* City Solicitor, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, March 24, 1952:

We adopt the plaintiff-appellant's statement of the question involved as follows: "In an action of assumpsit to recover the principal and interest on a municipal improvement bond which purports to be payable solely out of assessments limited to certain properties, where the parties expressly stipulate in a case stated that by reason of the city's negligent failure to collect the assessments the full amount of the bond became due and payable as of a certain date, is not the plaintiff holder of the bond entitled to interest from such date at the legal rate of 6% rather than at the rate of 5% specified in the bond?"

In their case stated the parties agreed that the City of Reading, during the years from 1928 to 1935, issued certain improvement bonds bearing interest at the rate of 5% per annum payable semi-annually. Each of the bonds provided that "This bond, principal and interest, is based solely and rests alone for its security and is payable only out of the assessments made and levied upon the properties benefited by the local improvement (street improvement) for which this bond is issued and from no other fund. It is expressly understood that the City of Reading is to be liable only for the amount collected on the said assessments and as fast as collected and as soon as there is sufficient money in the hands of the City Treasurer, from said assessments, in excess of interest due on outstanding bonds, he shall call in the bonds for payment in the order in which they are issued, . . . ." The City of Reading admitted, in the case stated, that, while it paid the interest on

the bonds from the dates of issue until certain specified defaults which occurred in the year 1943, it never paid any interest thereafter, and that on those "respective dates of default the full principal amount of each of said bonds became due and payable." It also admitted that it "negligently failed and neglected to collect the assessments provided for in said bonds and breached its implied covenant to pursue all reasonable measures as provided by law to collect said assessments securing said obligations, and thereby became liable for the payment of the principal of said bonds and the interest due thereon from the respective dates of default as aforesaid." Plaintiff, owner of 44 of the bonds, each in the face amount of $1,000, demanded payment of the principal sum of $44,000 with interest thereon at the rate of 6% per annum from said respective dates of default. According to the case stated the City, on August 1, 1949, offered to redeem plaintiff's bonds in their face amount with interest at the rate of 5% per annum from the respective dates of default of the bonds, but refused to pay either principal or any part of the interest unless plaintiff accepted principal and interest on the basis of 5% per annum. It was stipulated that if the court should be of opinion that plaintiff was entitled to 6% interest on the principal amounts of his bonds from their respective default dates then judgment should be entered in his favor based on a calculation of interest at that rate, but if the court decided that plaintiff was entitled only to 5% interest on the principal amounts then judgment should be entered in his favor based on a calculation of interest at that rate from the respective default dates of the bonds to August 1, 1949, when tender was made to plaintiff by the City on that basis.

The court below held that plaintiff was entitled only to the 5% interest rate, and, on May 2, 1951, entered judgment accordingly in the sum of $57,971.03. By

agreement of the parties that amount was thereupon paid by the City to plaintiff without prejudice to the latter's claim for additional interest which the City agreed to pay in case it was decided on appeal to this court that plaintiff was entitled thereto, but in no event was interest to run or be computed after May 2, 1951.

In *Nagle Engine & Boiler Works v. Erie*, 350 Pa. 158, 38 A. 2d 225, it was held, following many previous authorities,[1] that, where a city issues municipal improvement bonds with limited liability, it nevertheless makes itself generally liable thereon if it is negligent in enforcing collections of the assessments and liens for the benefit of the bondholders. And it was there pointed out that the theory underlying the rule was that the liability of the municipality arose, not in tort, but from contract, being based upon an implied covenant that it would exercise due care in the filing and enforcement of the liens and that, if it failed to exercise such care, it would pay the bonds just as though it had been originally named therein as general obligor.

Viewing the legal position of the City, therefore, as that of obligor on the bonds, it is the law of Pennsylvania that a debtor who defaults in the payment of the principal of an obligation when due and payable becomes liable for interest from the date of such default at the legal rate of 6% per annum until payment is made, irrespective of the rate prescribed in the obliga-

---

[1] *Addyston Pipe & Steel Co. v. City of Corry*, 197 Pa. 41, 46 A. 1035; *Gable v. Altoona*, 200 Pa. 15, 49 A. 367; *O'Hara v. Scranton*, 205 Pa. 142, 54 A. 713; *Dime Deposit & Discount Bank of Scranton v. Scranton*, 208 Pa. 383, 57 A. 770; *Dale v. City of Scranton*, 231 Pa. 604, 80 A. 1110; *Nolan v. City of Reading*, 235 Pa. 367, 84 A. 390; *Price v. Scranton*, 321 Pa. 504, 184 A. 253; *Palmer v. Erie*, 337 Pa. 5, 9 A. 2d 378; *Bessemer Investment Co. v. City of Chester*, 113 F. 2d 571.

tion itself for the period prior to maturity. In the *Nagle* case a host of decisions[2] was cited to the effect that, in the absence of an agreement to the contrary, a liquidated claim carries interest at the legal rate from the time the debt becomes due. In *Ludwick v. Huntzinger,* 5 W. & S. 51, 59, 60, it was said: "A question also arose, on the trial of this cause, as to the rate of interest that the plaintiffs were entitled to recover from the time that the bond became payable. . . . The counsel of the defendant below contended that the plaintiffs, if entitled to recover at all, were only entitled to recover interest at the rate of 3 per cent., as that was the rate agreed to be paid according to the terms of the bond from its date to the time thereby fixed for the payment of the principal. The court, however, advised the jury to give 3 per cent. interest on the principal mentioned in the condition of the bond, until it became payable, according to the tenor thereof, and 6 per cent. from that to the time of trial; which they accordingly did. In this the court were perfectly correct. Until the bond became payable the *agreement* of the parties regulated the allowance of interest, and the rate of it, but after that the *law* interposed, not only to allow, but to regulate the rate of interest that should be paid by the defendant or debtor for and on account of his illegal detention of the debt from the plaintiffs. Whenever one man binds himself to pay a specific sum of money to another by a certain day, and he fails to do so, he becomes liable, by the *law* of this State, to pay interest thereon at the rate of 6 per cent. per annum

[2] *Minard v. Beans,* 64 Pa. 411, 413; *West Republic Mining Co. v. Jones & Laughlins,* 108 Pa. 55, 68; *Canuso v. Philadelphia,* 326 Pa. 302, 310, 192 A. 133, 137; *Guardian Bank & Trust Co. Case,* 330 Pa. 411, 416, 199 A. 171, 173; *Gloeckler v. Imrie,* 118 Pa. Superior Ct. 441, 445, 446, 179 A. 883, 885; *J. Purdy Cope Hotels Co. v. Fidelity-Phenix Fire Insurance Co.,* 126 Pa. Superior Ct. 260, 265, 266, 191 A. 636, 639; Restatement, Contracts, §337(a).

afterwards, as long as he shall improperly withhold payment thereof, unless, perhaps, it should be expressly agreed otherwise by the parties. But the agreement of the parties here, in respect to the interest, extended no further than to the period fixed for the payment of the debt or principal; after that it was left to mere operation of law, which allows 6 per cent."

In *Wright v. Hanna*, 210 Pa. 349, 354, 355, 59 A. 1097, 1098, it was said: "It may be added, that it is but proper to say that where the interest on a promissory note is fixed at less than six per cent, such rate applies up to maturity of the note, and the words, until paid, relate to such maturity, and thereafter the legal rate of six per cent will prevail."

It being clear, then, that plaintiff was here entitled to interest at the rate of six per cent per annum from the date of default in the payment of the principal of each of the bonds until such payment was made, the remaining question is, when did such default occur? That question arises because the bonds did not expressly provide for any fixed date of maturity.[3] But if, as the City admitted in the case stated, it failed, beginning in 1943, by reason of its negligence, to collect the funds necessary to pay even the interest on the bonds, its default in failing to make the collections to pay the principal of the bonds must be regarded as occurring at that same time, for otherwise the City could go on indefinitely defaulting in the payment of the interest coupons but without incurring thereby any obligation to pay the

---

[3] The fact that the last coupon attached to the bonds is due February 6, 1961 is of no significance in fixing the time of maturity of the bonds. There was nothing in the body of the bonds referring to that date, and the number of coupons attached to the bonds was purely adventitious. The principal was to be paid when the City, *exercising proper diligence*, collected the necessary amounts from the assessments and liens.

principal of the bonds at any time whatever. Obviously recognizing this, the City frankly admitted, in the case stated, as hereinbefore quoted, that *on the respective dates of default in the payment of interest the full principal amount of each of the bonds became due and payable,* and that, by its failure to collect the assessments *it became liable for the payment of the principal and interest from the respective dates of such defaults.* Accordingly it is clear that, since it defaulted in the payments of the principal of the bonds when they thus became legally due and payable, the legal rate of interest at six per cent per annum attached thereto from the respective dates of default, and, since it was further admitted by the City in the case stated that it refused to pay either the principal or any part of the interest unless plaintiff accepted payment on the basis of the five per cent rate per annum, plaintiff was justified in refusing such tender of a sum less than the amount due, and therefore his right to interest at the six per cent rate continued until May 2, 1951, at which time he received payment of the principal amount of his bonds under an agreement that interest should thereupon cease.

The judgment is reversed and the record remanded with direction to enter judgment on the case stated as of May 2, 1951 in favor of plaintiff and against defendant for the principal amount of plaintiff's bonds with interest thereon at the rate of six per cent per annum from the respective dates of default, as specified in the case stated, to May 2, 1951.