## Swan v. Fountain Hill Borough

*Robert E. Haas* and *Morris Perkin,* for plaintiff.
*Harvey H. Steckel,* for defendant.

HENNINGER, J., July 18, 1938.—This case came on to be heard on trial by the court without a jury, upon stipulation of the parties. From the admissions in the pleadings and testimony taken, the court makes the following

*Findings of fact*

1. Plaintiff is Tyrus E. Swan, who resides at 308 Northampton Street, Easton, Pa.

2. Defendant is the Borough of Fountain Hill, a municipal corporation of the Commonwealth of Pennsylvania, located in the County of Lehigh.

3. On various dates from December 27, 1928, to December 6, 1929, defendant, by its duly authorized officers, made, executed, and delivered certain bonds, numbered 1 to 339, inclusive, and known as "United States of America, Borough of Fountain Hill, County of Lehigh, State of Pennsylvania, District A House Sewer Bonds," each in the sum of $500, payable to the bearer thereof in the manner provided therein, and bearing interest at the rate of six percent per annum, payable semi-annually. The said 339 bonds were issued and delivered by defendant to Christ Donatelli Construction Company and Salvucci & Alessi, the contractors who built the sewer system, in payment thereof.

4. Plaintiff is the purchaser and holder of six of the bonds referred to, namely, 329 to 334, inclusive, originally issued and delivered as aforesaid on December 1, 1929, and the bonds are carried by defendant upon its books in the name of plaintiff.

5. At the time this suit was instituted there was due upon the said bonds the principal amount of $3,000, with interest from December 1, 1934.

6. On May 1, 1937, defendant paid plaintiff on account of principal the sum of $1,200, leaving a balance of principal now due of $1,800, and interest on $3,000 from December 1, 1934, to May 1, 1937, and on $1,800 from May 1, 1937, to date.

7. Exhibit "A" attached to plaintiff's statement of claim is a true and correct copy of one of the bonds, all 339 of which are identical in form and content, except as to number and date of issue.

8. All the 339 bonds mentioned hereinbefore were issued in pursuance of section 13 of Ordinance no. 88, entitled "An ordinance providing for the construction of the sanitary sewers, house connections and branches in sewer District A of the Borough of Fountain Hill, County of Lehigh and State of Pennsylvania and for the levy, assessment and collection of the cost and expense thereof," approved July 9, 1928, and marked "Plaintiff's Exhibit A", under the authority of The General Borough Act of May 4, 1927, P. L. 519, entitled "An act concerning boroughs, and revising, amending, and consolidating the law relating to boroughs," together with a resolution adopted by the town council on August 6, 1928, fixing the amount of the bonds to be issued.

9. All the bonds referred to hereinbefore were to be redeemed and interest paid upon them from a fund to be derived from the collection of assessments and liens, made, levied, and filed against the lands within the limits of the House Sewer District "A" in the Borough of Fountain Hill, County of Lehigh and Commonwealth of Pennsylvania, as set forth on the face of the said bonds, of which Exhibit "A" aforesaid is an exact copy, and as defined in section 13 of said Ordinance no. 88.

10. On January 31, 1930, defendant levied assessments against the properties within the limits of the said District "A" in an amount totaling $186,265.58.

11. Section 10 of Ordinance no. 88, referred to hereinbefore, provided that the assessments were payable in five equal instalments; the first, due and payable at the expiration of 30 days after the date of assessment; the second, at the expiration of 6 months thereafter; the third, at the expiration of 12 months thereafter; the fourth, at the expiration of 18 months thereafter; and the fifth and final instalment, at the expiration of two

years thereafter. This section provided further that if the first or any subsequent instalment should remain unpaid for a period of two months after the same became due and payable, the whole of the assessment remaining unpaid should then be forthwith due and payable and collected according to law.

12. Section 12 of Ordinance no. 88, referred to hereinbefore, provided that the borough solicitor should file liens upon all unpaid assessments and that he should proceed to collect the same according to law.

13. On December 2, 1929, Borough Council of Fountain Hill Borough accepted sections 2 and 3 district "A" sanitary sewers constructed by Salvucci & Alessi, section 1 having already been completed.

14. A total of $32,500 in bonds of $500 denomination is now outstanding, being numbered and owned and having matured as follows:

October 1, 1934, maturity totaling $8,000, nos. 273, 274 and 275, Aaron S. Kroner; no. 276, Easton School District; nos. 279, 280, 281, 282, 283, 284, Anna Weierbach; nos. 285, 286, 287, 288, 289, 290, Mary L. Bigler.

November 1, 1934, maturity totaling $15,000; nos. 291, 292, 293, 294, 295, 296, Mary L. Bigler; nos. 297, 298, Nettie Kroner; nos. 299, 300, Louis W. Kroner; nos. 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, Charles H. Nonnemacher.

December 1, 1934, maturity totaling $9,500; nos. 321, 322, 323, 324, 325, 326, Aaron S. Kroner; nos. 327, 328, Mary L. Bigler; nos. 329, 330, 331, 332, 333, 334, Tyrus E. Swan; nos. 335, 336, 337, 338, 339, Louis W. Kroner.

15. A payment of 40 percent of the principal amount due on the said outstanding bonds was made to said bondholders on May 1, 1937, so that the principal amount now due is $19,500, with interest as follows: Interest on $8,000 from April 1, 1934, to May 1, 1937; interest on $15,000 from May 1, 1934, to May 1, 1937; interest on $9,500

from June 1, 1934, to May 1, 1937; and interest on $19,-500 from May 1, 1937, to date.

16. On several occasions plaintiff or others on his behalf demanded payment in full of all outstanding bonds and prompt collection of all unpaid assessments.

17. Defendant has failed to make collection of outstanding assessments because: (1) It did not desire its citizens to lose their properties; (2) it felt that no amount would be realized, but that the borough would become purchaser of the properties; (3) the bondholders refused to advance costs of foreclosure. No bondholders assented to this delay.

18. Defendant has protected the bondholders by taking all legal steps necessary to preserve the lien of said assessments and all unpaid assessments are presently valid and enforcible liens upon the respective properties.

19. Defendant has notified its tax collector to prefer the taxing authorities as against the bondholders in respect to any collections from taxpayers against whose properties unpaid assessments are a lien.

20. On February 18, 1937, there was due upon unpaid assessments the principal sum of $22,255.55 and interest amounting to between $3,000 and $3,500.

21. At the time of trial, the fund available for satisfaction of the balance due upon outstanding bonds was cash $2,753, outstanding liens, principal $18,600 and interest $3,069, or a total of $24,422.

22. At the same time there was due upon the balance of outstanding bonds, principal $19,500 and interest $6,800, or a total of $26,307.75.

23. The discrepancy is due to the fact that: (1) Interest began to run on the bonds prior to the completion of the sewage construction, while interest on the liens did not begin to run until after all work had been completed and the assessments made; and (2) interest continued to run on bonds until a sufficient fund was realized to redeem them, although interest had ceased to run upon the

liens whose payment furnished the fund from which bonds were redeemed.

24. On January 1, 1935, after default in payment of interest upon the bonds in suit, the electoral loans of the Borough of Fountain Hill amounted to $46,500, its councilmanic loans $14,000, its current loans $10,000, and its sewer bond indebtedness $33,500. At that time its assessed valuation of real estate and occupations was $2-925,610.

25. On January 1, 1936, the electoral loans of the Borough of Fountain Hill amounted to $41,500, its councilmanic loans $36,000, its current loans $11,000 and its sewer bond indebtedness $33,500, while its assessed valuation was $2,919,060.

26. On January 1, 1937, the electoral loans of the Borough of Fountain Hill amounted to $36,500, its councilmanic loans $32,000, its current loans $14,500, and sewer bond indebtedness $33,500, while the annual valuation was $2,910,609.

27. On January 1, 1938, the electoral loans of the Borough of Fountain Hill amounted to $31,500, its councilmanic loans $28,000, its current loans $9,500 and sewer bond indebtedness $33,500, while the assessed valuation was $2,956,936.48.

### Discussion

This case turns upon three questions: (1) Does the borough owe its sewer bondholders any duty beyond diligence in the preservation of the liens which are the sole source of payment; (2) has the borough performed any acts prejudicial to the interest of the bondholders; (3) does the Act of June 3, 1933, P. L. 1466, 53 PS §397(a), impose an absolute liability upon the borough for payment of these bonds, regardless of any negligent or prejudicial act on its part?

On the first point we believe that the case of Dale v. City of Scranton, 231 Pa. 604, is conclusive. There, as here, the obligation of the city was delivered to the con-

tractor and we see no difference in the distinction that there it was the original contract while here it was in the form of bonds. There, as here, payments were to be made solely out of assessments and only as the same were collected and there also the city performed all necessary actions to preserve the lien, but refused to force collection. In Price et al., Execs., v. Scranton, 321 Pa. 504, 506, this principle was affirmed that lack of due diligence may be found in failure to press the liens to collection within a reasonable time. It is there pointed out (page 508) that First Catholic Slovak Union v. Scranton, 311 Pa. 500, was reversed solely on the ground that facts did not sufficiently appear on the record to permit a finding of neglect on the city's part.

Granting then that no liens have been lost through any neglect on the part of the borough officials, and that the bondholders have today (excepting for mounting delinquent taxes and declining real estate value) all of the security promised them in their bonds, are there any other acts on the part of the borough officials which compel it to assume responsibility for this bond issue? We think there are three such acts.

First, the assessment, while on its face ample to pay all bonds in full, has proved insufficient for the two reasons given in Finding of Fact no. 23. If all the liens are collected in full (and there seems to be grave doubt as to some) there will not be a sufficient fund to pay the principal and interest in full. The ordinance and the bonds require retirement for every $500 received, but this could not have been done or the excess of interest paid over interest earned would not have been so great. Under the doctrine of Nolan v. Reading City, 235 Pa. 367, this failure to levy an adequate assessment renders the borough liable for the amount of the bonds generally and not only to the extent of the deficiency.

Second, in failing to foreclose, the borough had one acceptable motive and one laudable but invalid motive and

one totally invalid motive. If failure to foreclose had been based solely upon the judgment of the borough officials that no good would be accomplished, we might accept the case of the First Catholic Slovak Union v. Scranton, supra, that delay was excusable and for the best interests of the bondholders. While experience during the past several years convinces us that an actual sale would not have produced any cash, we are unable to say with defendant that foreclosure would not have produced any cash, for the mere threat of foreclosure might have resulted in payment of the liens. Nor, on the other hand, can we state definitely, as plaintiff asks us to do, that the delay was prejudicial, for the result of threatened foreclosure is purely problematical.

But the borough, besides the valid motive of discretion, also had the laudable but invalid motive of a desire to protect its property holders. While several of the officials protest that this motive was a minor one and that the bondholders did not suffer in any way, we are convinced that it played a large part in determining their policy. We cannot condemn this policy and agree that eventually it will work out to the best interests of the borough as well as of the property holders, but, if the borough adopts such a policy with unpredictable consequences, then it should support that policy by an assumption of these bonds.

The last motive for failure to foreclose was refusal of the bondholders to advance foreclosure costs. Neither side has been able to furnish us with cases, nor have we been able to find any expressly stating that the municipality must advance foreclosure costs, but all of the cases already cited emphasize the duty upon the municipality diligently to collect all assessments. If all other efforts to collect fail, the law contemplates that collection will be made by realizing the value of the property at a sheriff's sale and it would follow that the municipality is bound to take the necessary steps to collect by that method. The municipality would not suffer since any costs advanced

by the municipality would be a prior claim upon the fund realized.

Plaintiff also has a just cause for complaint in defendant's failure to foreclose or to assume the bonds in that delinquent taxes are constantly increasing and assume priority over the sewer assessments, eventually wiping out any value the properties may now have.

Third, we believe the borough has made itself responsible for these bonds because it instructed its tax collector to prefer the taxing authorities over the bondholders in any collections from property owners.

In this view of the case we are not bound to rest our decision upon the Act of 1933, supra, purporting to make all improvement bonds the general obligation of the municipality unless the amount of the issue of such bonds with the existing debt exceeds the limits of indebtedness permitted by the Constitution.

That act has been declared constitutional by Judge Stewart in In re Indebtedness of City of Easton, 25 Northamp. 347, and by Judge Maris in Bessemer Investment Co. v. City of Chester, 31 D. & C. 551. The problem involved in this case under that act is as to the exception, whether the words "the amount of any such issue" refer to the original amount or to the amount outstanding when the question of municipal assumption is raised. The other question is whether the words "the limits of indebtedness permitted by the Constitution" refer to the two percent of assessed valuation permitted without electoral vote or to the seven percent absolute limit of borrowing capacity. There is the further problem of determining whether the amount of liens held in trust for bondholders, which would pass to the city as its own property upon assumption of the bonds, would become an asset deductible in determining the net indebtedness.

These problems are of too far-reaching importance to be lightly decided in the absence of an absolute necessity for their decision. In the two cases above cited no such problems existed, as it was agreed by the parties to the

litigation in each case that the improvement bonds added to the existing councilmanic indebtedness did not exceed two percent of the assessed valuation.

Our holding that the actions of the borough officials has resulted in fastening upon the borough liability for these bonds cannot be interpreted as indicating that there has been any breach of duty on their part. With conflicting responsibilities to the citizens of the borough, the municipality itself, and the bondholders in these unusual times, the borough officials chose a course which was eminently fair to and for the best interests of the borough and its residents.

If that course made the borough liable for this bond issue, no one has any cause for complaint. It is true that the bondholders presumably knew that the bond issue did not carry the credit of the borough itself, but so far as the value of the security is concerned they could not appraise every item of property to determine whether the borough, in order to establish its sewage system, assessed a part of the cost against lots whose value was not increased pro tanto by the improvement. On the other hand, the benefits to the borough as a whole, through the possession of such a system, should easily offset any burden it may have to bear by assumption of these bonds, a burden almost negligible when we consider that all the liens will become the property of the borough. Furthermore, realization upon the remaining liens may be indefinitely postponed, and it is a decided disadvantage to the borough to have a defaulted issue of bonds outstanding.

We regret that the decision we feel compelled to render will entitle plaintiff to receive six percent interest upon his investment, for by this decision he is being put into the position of one holding a general borough bond and such bond would not have carried that rate of interest. It is beyond our power to change this result, however, and any reduction in interest must be voluntary on plaintiff's part. . . .

We adopt as applicable to this case the following

*Conclusions of law*

1. Sixty days after default occurred in the payment of any instalment of a sewer assessment, the entire assessment became immediately due, and it was the duty of the borough solicitor to proceed to collect the same under the general laws relating to the collection of municipal claims.

2. It was the duty of defendant's officials to enforce the collection of said assessments solely for the benefit of the bondholders.

3. Failure of defendant's officials to enforce the collection of said assessments in order to protect the property owners of the Borough of Fountain Hill rendered defendant liable to the bondholders for the principal and interest of said bonds, regardless of the clause in said bonds and the ordinance authorizing them, limiting defendant's liability to the amount of the sewer assessments.

4. Failure of defendant's officials to enforce the collection of said assessments, because the bondholders did not pay the foreclosure costs or indemnify defendant for their amount, rendered defendant liable to the bondholders for the principal and interest of said bonds, regardless of the clause in said bonds and the ordinance authorizing them, limiting defendant's liability to the amount of the sewer assessments.

5. Failure of the Borough of Fountain Hill to levy an assessment adequate to meet the principal and interest of the sewer assessment bonds, the subject of this suit, rendered defendant liable to the bondholders for the principal and interest of said bonds, regardless of the clause in said bonds and the ordinance authorizing them, limiting defendant's liability to the amount of the sewer assessments.

6. Plaintiff in the present action is entitled to judgment against the Borough of Fountain Hill for the balance of the principal amount of the sewer assessment bonds held by him, to wit, $1,800, and to interest on $3,000

from December 1, 1934, to May 1, 1937, and on $1,800 from May 1, 1937, to the date of entry of such judgment.

Now, July 18, 1938, the decision of the court, sitting without a jury, is that plaintiff is entitled to recover from defendant the sum of $1,800 and interest as provided in the sixth conclusion of law. This decision is ordered filed in the prothonotary's office of Lehigh County and notice of its filing served upon the parties or their counsel. If no exceptions are filed thereto within 30 days after such service, judgment may be entered as therein provided, together with costs.