In re Arthur P. DILTS t/a Dilts Electric Company and M. Joan Dilts, His Wife, Debtors.

Arthur P. DILTS t/a Dilts Electric Company and M. Joan Dilts, His Wife, Plaintiffs,

v.

MELLON BANK, N.A., Defendant.

Bankruptcy No. 87–2336PGH.
Adv. No. 91–345.

United States Bankruptcy Court, W.D. Pennsylvania.

July 29, 1992.

Gary W. Short, Pittsburgh, Pa., for debtors.

Christopher J. Richardson, Pittsburgh, Pa., for Mellon Bank, N.A.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Background

This matter is before the Court on the Complaint of Arthur P. Dilts t/a Dilts Electric Company and M. Joan Dilts, his wife ("Debtor") for a determination of the secured status of the claim of Mellon Bank, N.A. ("Mellon") against the Debtors' residence. We held an evidentiary hearing on February 7, 1992 and the matter is now ready for decision.

### Facts

On January 26, 1981, the Debtor borrowed $55,000 from Mellon and executed a promissory note (the "Note"). To secure repayment, the Debtor granted Mellon a first mortgage (the "Mortgage") on its residence located at 103 Hillside Drive, Zelienople, Pennsylvania.

The Note provides for repayment of principal with interest as follows:

> FOR VALUE RECEIVED, the undersigned ("Borrower") promise(s) to pay Mellon Bank, N.A., a national banking association, or order, the principal sum of Fifty–Five Thousand and 00/100 ($55,-000.00) Dollars, with interest on the unpaid principal balance from the date of this Note, until paid, at the rate Fourteen (14%) percent per annum. Principal and interest shall be payable at Mellon Bank, N.A., Zelienople, Pennsylvania or such other place as the Note holder may designate, in consecutive monthly installments of Six Hundred Fifty One and 68/100 Dollars (U.S. $651.68) on the first day of each month beginning March 1, 1981. Such monthly installments shall continue until the entire indebtedness evidenced by this Note is fully paid, except that any remaining indebtedness, if not sooner paid, shall be due and payable on February 1, 1986.

On February 1, 1986, the unpaid principal balance was $54,187.42.[1] After February 1, 1986, the Debtor continued to make monthly payments in accordance with the payment called for by the coupon books which Mellon supplied to the Debtor.

Between February 1, 1986 and September 2, 1987 ("Date of Filing"), the date on which the Debtor filed its voluntary Petition under Chapter 11 of the Bankruptcy Code, the Debtor made 22 monthly payments totaling $17,352.25 and a payment of $8.46 for a total of $17,360.71. Mellon applied the payments as follows: Interest $13,217.89; Principal $527.99; Escrow for insurance and taxes $3,092.97; Late charges $425.58.[2]

---

1. Mellon asserts that the unpaid principal balance on February 1, 1986 was $54,195.89. We will disregard this minor discrepancy.

2. The application of payments as shown on the document entitled "Dilts' Payment History" is $96.28 less than the payment amounts received. This is due to errors in application of the payments on 7/11/86, 8/18/86 and 4/13/87. The

From the Date of Filing through April 26, 1991, the date on which the Debtor obtained confirmation of a Plan of Reorganization ("the Plan"), the Debtor paid Mellon 41 payments totaling $35,361.02. Mellon applied the payments as follows: Interest $27,209.76; Principal $1,464.21; Escrow for insurance and taxes $6,113.60; Late charges $469.22.[3]

The Plan provides Mellon interest on its claim at the rate of 10.5% as of the effective date of the Plan, August 7, 1991 ("Effective Date"). The parties agree that Mellon is oversecured and that the value of the collateral was $67,000 as of September 2, 1987.

The Debtor asserts that the Note matured on February 1, 1986; that the Note does not provide for the continuation of the contract rate of interest after maturity; that, under Pennsylvania law, the Note bore interest after maturity at the legal rate of 6%; that as of September 2, 1987, Mellon's "security cushion" in the collateral was $12,812.58 (the "Security Cushion"); and that Mellon, as an oversecured creditor, is not entitled to postpetition interest payments in excess of its Security Cushion and therefore, to the extent that the Debtor's postpetition interest payments to Mellon exceed the Security Cushion, the balance is to be applied to reduce the principal balance.

Mellon asserts that it is entitled to the contractual rate of interest of 14% until the Effective Date; that the course of conduct of the parties evidences an intent that the 14% rate of interest continue post-maturity; and that it is entitled to late charges and reasonable attorney's fees.

### Issues

1. Whether Mellon is entitled to the contract rate of interest of 14% from February 1, 1986 through August 6, 1991 or whether Mellon is limited to the legal rate of interest of 6%.

2. Whether Mellon is entitled to late charges and attorney's fees.

3. Whether postpetition interest payments made by the Debtor in excess of the "Security Cushion" should be reallocated to reduce the principal balance of the Note.

### Discussion

#### Interest Rate

■ Mellon has not taken a judgment on the Note. Thus, the obligation is based on the Note. The Note provides that any remaining indebtedness shall be due and payable on February 1, 1986. Therefore, February 1, 1986 is the maturity date ("Maturity Date"). The Note provides an interest rate of 14% "until paid." When notes provide for an interest rate of other than the legal rate of 6%, "such rate applies up to maturity of the notes, and words 'until paid' relate to such maturity, and thereafter the legal rate of 6% will prevail." *Wright v. Hanna,* 210 Pa. 349, 59 A. 1097 (1904).

■ The parties can by mutual consent agree to other terms for the rate of interest after maturity but such language must clearly appear in the instrument itself. *In re Presque Isle Apartments,* 112 B.R. 744, 747 (Bankr.W.D.Pa.1990); *In re Petrof,* 62 B.R. 696 (Bankr.W.D.Pa.1986). In the absence of an express agreement to the contrary, the legal rate of interest applies from the date of maturity irrespective of the rate prescribed in the instrument for the period prior to maturity. *Miller v. City of Reading,* 369 Pa. 471, 476, 87 A.2d 223, 225 (1952); *Daset Mining Corp. v. Industrial Fuels Corp.,* 326 Pa.Super. 14, 36, 473 A.2d 584, 595 (1984).

---

Debtor is due a credit of $96.28 due to these errors plus a credit for interest charged on this amount from the date of the errors.

3. The application of payments is $104.23 less than the payment amounts received. This is due to errors in application of payments on 5/22/89, 6/16/89 and 2/11/91. On 5/22/89, Mellon failed to apply $104.28 of the payment received. It appears that the $104.28 should have been applied to late charges. On 6/16/89, Mellon applied .02 greater than the payment received and on 2/11/91, Mellon applied .03 greater than the payment received. Either Mellon or its counsel were careless in the application of payments or in the preparation of "Dilts' payment history."

■ The language of the Note provides for interest at the rate of 14% "until paid." Under Pennsylvania law, "until paid" relates only to the maturity date of February 1, 1986. The Note contains no express language providing for continuation of the 14% rate of interest after maturity. Mellon asserts that the actions of the parties evidence an intent to continue an interest rate of 14% post-maturity. Mellon never demanded payment in full, but instead continued to provide coupon payment books which the Debtor used to make monthly installments. The Debtor paid what Mellon said was due. The Debtor was unaware that the obligation to pay 14% had ended. There is no evidence that the Debtor intended to pay an interest rate greater than that to which Mellon is entitled. Thus, after February 1, 1986, the Note bore interest at the legal rate of 6%.

The terms and conditions of the obligation were modified as of the Effective Date of the Debtor's Plan to provide Mellon interest at the rate of 10½%.

Accordingly, Mellon is entitled to its contractual rate of interest of 14% from January 26, 1981 through February 1, 1986; the legal rate of interest of 6% after maturity, from February 1, 1986 through August 7, 1991; and 10½% thereafter as provided by the Plan.

*Late Charges and Attorney's Fees*

■ Bankruptcy Code § 506(b) permits an oversecured creditor "any reasonable fees, costs or charges provided for under the agreement under which such claim arose." The parties having agreed that Mellon is oversecured, Mellon is entitled to payment of late charges and attorney's fees which are provided for under the terms of the Note.

The Note provides that the Debtor shall pay a late charge of 4% of any monthly installment not received by Mellon within 15 days after the installment is due. According to the terms of the Note, the last installment of $54,187.42 was due on February 1, 1986. It appears from the Note that Mellon is entitled to a 4% late charge on the delinquent installment of $54,187.42

or $2,167.50. Mellon, however, chose not to enforce the requirement that the Debtor make a balloon payment, but chose to provide the Debtor with coupon books for continued monthly installments. Mellon will therefore be limited to collection of late charges on delinquent monthly installments as shown on Dilts' payment history for the period of 2/4/86–5/3/91 in the amount of $894.80 plus an additional $104.28 which Mellon failed to apply as a late charge from the payment of 5/22/89.

■ The Note provides for the payment of reasonable attorney's fees "[i]f suit is brought to collect this Note." In addition to the language of the Note regarding attorney's fees, the Mortgage provides:

Uniform Covenants. Borrower and Lender covenant and agree as follows:

. . . . .

7. Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in the Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees ... Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, shall become additional indebtedness of Borrower secured by the Mortgage....

The language contained in the Mortgage entitles Mellon to reimbursement of reasonable attorney's fees and costs which it has incurred in this bankruptcy case. *See In re Clark Grind & Polish, Inc.,* 137 B.R. 172 (Bankr.W.D.Pa.1992) (and cases cited therein).

Mellon will be directed to file an Application for Allowance of Attorney's Fees and Reimbursement of Expenses and a hearing

shall be held to determine the reasonableness thereof, unless the parties can stipulate to a reasonable amount.

### Reallocation of Postpetition Interest Payments

 Relying on *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), the Debtor asserts that under § 506(b), Mellon, as an oversecured creditor, is not entitled to postpetition interest payments in excess of its Security Cushion and therefore, to the extent that the Debtor's postpetition interest payments to Mellon exceed the Security Cushion, the balance is to be applied to reduce the principal indebtedness.

Having determined that Mellon is entitled to a 6% interest rate between the Date of Filing and the Effective Date of the Plan, we calculate that Mellon is entitled to postpetition interest in an amount which is less than the Security Cushion and therefore, this issue is moot.

An appropriate Order will be entered.

### ORDER

This 29th day of July, 1992, in accordance with the accompanying Opinion, it shall be, and hereby is, ORDERED as follows:

1. For the period February 1, 1986 through August 6, 1991, Mellon Bank, N.A. is entitled to interest on the principal balance of its Note at the legal rate of 6%.

2. Mellon Bank, N.A. is entitled to late charges for the period February 1, 1986 through August 6, 1991 in the amount of $999.08.

3. Mellon Bank, N.A. is entitled to reimbursement of reasonable attorney's fees and expenses incurred in collection of the Note. If the parties are unable to stipulate to a reasonable amount within 45 days from the date of this Order, Mellon Bank, N.A. shall file an Application for Allowance of Attorney's Fees and Expenses, upon which the Court will fix a hearing.

4. The Debtor is entitled to a principal credit in the amount of $96.28 as a result of the misapplication of payments on July 11, 1986, August 18, 1986 and April 13, 1987.

5. The parties shall, within 45 days, submit a reallocation of the payments Mellon Bank, N.A. received from the Debtor after February 1, 1986.

6. This Order is interlocutory and not appealable pending a final resolution of the remaining issues.