NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3135
_____

In Re:  BRIAN J. NIXON,
Debtor.

MICHAEL T. FOSTER,
Appellant.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cv-417)
District Judge:  Hon. Berle M. Schiller
_____

Submitted Under Third Circuit LAR 34.1(a)
December 14, 2010

Before:  RENDELL, JORDAN and HARDIMAN, *Circuit Judges*.

(Filed: December 15, 2010 )
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Michael Foster ("Foster"), an oversecured creditor, appeals an order of the District

Court for the Eastern District of Pennsylvania affirming the Bankruptcy Court's order

granting in part Debtor Brian J. Nixon's ("Nixon") objection to Foster's Amended Proof

of Claim.  The Bankruptcy Court's order disallows a portion of Foster's claimed attorney

fees, calls for the distribution of an uncontested judgment amount prior to confirmation of the Chapter 13 Plan, and tolls the running of interest on Foster's Amended Proof of Claim. For the following reasons, we will affirm.

## I.      Factual Background

Because we write only for the parties, we assume familiarity with the facts of this case and the proceedings. In December 2004, Nixon obtained a business loan from Quakertown National Bank (the "Bank") in the principal amount of $215,000. The loan agreement provided for the recovery of reasonable attorney fees, including those arising from bankruptcy proceedings.

Nixon subsequently defaulted on the loan. In June 2007, the Bank filed a Complaint in Confession of Judgment of $247,067.26 in the Pennsylvania Court of Common Pleas in Lehigh County. The judgment attached as a lien to Nixon's real property, which included land on Gerryville Pike in Bucks County, Pennsylvania (the "Gerryville Pike Property"). On October 7, 2007, the Bank assigned the judgment to Foster. Nixon then filed a Chapter 13 bankruptcy petition and, on January 3, 2008, the Bankruptcy Court approved the sale of the Gerryville Pike Property for $360,664.37.[1]

On April 28, 2008, Foster filed a secured Proof of Claim for $248,319.40, plus post-judgment interest. Nixon filed three iterations of his Chapter 13 Plan, each providing for full payment of Foster's Proof of Claim. Foster filed objections to each.

---

[1] These proceeds were put into the Chapter 13 Trust beginning June 27, 2008 and were sufficient to pay the entire undisputed amount of Foster's claim.

2

On July 3, 2008, Foster filed an Amended Proof of Claim for $322,471.85 which reflected the addition of post-judgment interest, late fees, and costs, including attorneys' fees. On July 8, 2008, Nixon filed an objection to Foster's Amended Proof of Claim arguing that it claimed "excessive and unspecified interest and late fees as well as excessive and unspecified costs and other fees including attorney's fees." (Bankr. D.I. 68.)

On September 11, 2008, the Bankruptcy Court held a hearing on Nixon's objection to Foster's Amended Proof of Claim, at which Foster requested that four weeks be added to the briefing schedule. After learning that Nixon's counsel had already given Foster's counsel three additional weeks as a professional courtesy, the Bankruptcy Court granted Foster's request but determined that the running of post-petition interest on Foster's claim should be tolled for the seven-week period. No objection was made to that ruling. On December 18, 2008, the Bankruptcy Court *sua sponte* noted that the funds to satisfy Foster's claim were being held by the Trustee and questioned why, despite knowing the funds were available, Foster had failed to press for payment and had refused Nixon's offers of payment. Considering "the issue of settlement in the context of Foster's purposeful delay of the proceedings" (App. at 55), the Bankruptcy Court ordered the Chapter 13 Trustee to pay Foster the uncontested judgment amount of $247,067.26 "to ensure that no further claim for interest accrual could be made." (App. at 9.) That order was issued prior to the confirmation of a plan, which did not occur until January 29, 2009.

Ultimately, the Bankruptcy Court placed the burden of proof as to the validity of Foster's claim on him, and determined that Foster's allowed claim would consist of the principal amount, attorneys' fees and costs of $8,265.50,[2] and interest at the contract rate of index plus one percent (9.25%) from the judgment date to September 25, 2007, and at the Default Rate of index plus five percent (13.25%) from September 25, 2007 to September 11, 2008. Apparently in light of Foster's questionable conduct in delaying proceedings, the Bankruptcy Court determined that no interest should accrue past September 11, 2008.[3] Subsequently, on January 29, 2009, the Bankruptcy Court confirmed Nixon's Chapter 13 Plan.

On appeal to the District Court, Foster argued that the Bankruptcy Court erred in placing the burden of proof with respect to the Amended Proof of Claim on him, in disallowing a portion of his claimed attorneys' fees, and in tolling the running of interest on his claim, both for the seven-week period and post-September 11, 2008. The District Court affirmed. With respect to the first two issues, the District Court held that the Bankruptcy Court rightly placed the burden of proof on Foster and had not abused its

---

[2] Foster utilized three attorneys throughout the course of Nixon's bankruptcy proceeding: Marc Kranson, Michael Kaliner, and Ronald Clever. Clever's hours were reviewed and reduced by the Bankruptcy Court. Clever billed 106 hours at an hourly rate of $275, totaling $29,190 allegedly incurred from September 2007 to September 2008. Though he communicated with the Court at various hearings, Clever never entered an appearance on behalf of Foster or signed any motions or pleadings.

[3] The District Court correctly noted that, though the December 23, 2008 Order from which Foster appealed makes no reference to a suspension of interest, it is clear that "interest stopped accruing on September 11, 2008, the date of the hearing on the Objection." (App. at 14.)

discretion in reviewing and ultimately reducing the fee request.[4]  With respect to the tolling of interest, the District Court held that the seven-week tolling was appropriate because it had been agreed to by the parties and that the post-September 11, 2008 tolling was appropriate because Foster's claim to interest was subject to equitable defenses to which Foster was susceptible given his dilatory conduct.

Foster then filed this timely appeal.

## II.    Standard of Review

Our review of the legal determinations of the District Court is plenary.  *In re Tower Air, Inc.*, 397 F.3d 191, 195 (3d Cir. 2005).  "Because the District Court sat as an appellate court to review the Bankruptcy Court, we review the Bankruptcy Court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for abuse thereof."  *In re Goody's Family Clothing*, 610 F.3d 812, 816 (3d Cir. 2010) (citation omitted).  We consider the reasoning of the District Court as an important aid to explicating the issues in the case.

## III.    Discussion[5]

We adopt without further discussion the District Court's decision and reasoning with respect to the burden of proof, disallowance of certain attorneys' fees, and the

---

[4] Specifically, the Court found the Bankruptcy Court application of the lodestar method and resultant reduction of attorney fees appropriate.  The court further noted that "[f]actual determinations regarding the reasonableness of time spent on a bankruptcy case are best left to the judge who listened to the testimony on the matter."  (App. at 50.)

[5] The District Court had jurisdiction to hear this appeal from the final order of the United States Bankruptcy Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 158.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

tolling of interest for the seven-week period, because the District Court correctly and adequately addressed those issues.  We address below the tolling of interest post-September 11, 2008 and the pre-confirmation distribution of the uncontested judgment amount.

A.    *Tolling of Interest Beyond the Agreed 7 Week Period*

Although the Bankruptcy Court cited no authority for the tolling of interest beyond the agreed upon seven weeks, its action was permissible.  Section 105(a) of the Bankruptcy Code provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code] … or to prevent an abuse of process."   It is well settled that the court's power under § 105(a) is broad.  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 236 (3d Cir. 2004).  However, that power is not limitless.  The Bankruptcy Court's actions "cannot trump specific provisions of the Bankruptcy Code."  *Id.*

Here, 11 U.S.C. § 506(b) appears to restrict the Bankruptcy Court's power to deny interest to an oversecured creditor.  That section provides that an oversecured creditor "shall be allowed interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."  11 U.S.C. § 506(b); *see also United States v. Ron Pair Enters.*, 489 U.S. 235, 235 (1989) (finding that, under § 506(b), "recovery of postpetition interest is unqualified, whereas recovery of those fees, costs, and charges is allowed only if they are reasonable and provided for in the agreement under which the claim arose").  The Bankruptcy Code does not specify, however, that an oversecured creditor must receive interest indefinitely or at

6

the contract rate. *Cf. In re South Canaan Cellular Invs., Inc.*, 427 B.R. 44, 77 (Bankr. E.D. Pa. 2010) (noting that, during postpetition, pre-effective date, "most courts will award interest under section 506(b) at the contract rate to an oversecured creditor, which interest may include a default rate" but that it has also been found that § 506(b) "does not reflect an entitlement to interest at the contractual rate"). In several instances, courts have used equitable considerations to modify the interest awarded oversecured creditors within the parameters of the code. *See Urban Communicators PCS Ltd. P'ship v. Gabriel Capital, L.P.*, 394 B.R. 325, 338 (S.D.N.Y. 2008) (noting that the presumption in favor of applying a contractual default rate of interest has been subject to equitable considerations in situations where there "has been misconduct by the creditor, where application of the statutory interest rate would cause direct harm to the unsecured creditors, where the statutory interest rate is a penalty, or where its application would prevent the Debtor's fresh start"); *In re DeMaggio*, 175 B.R. 144, 148 (Bankr. D.N.H. 1994) (noting that the "Bankruptcy Court … may exercise some degree of discretion in determining the appropriate rate of postpetition interest on an oversecured claim"); *In re La Guardia Assocs.*, Nos. 04-34512 and 04-34514, 2006 WL 6601650, *38 (Bankr. E.D. Pa. 2006) (concluding "that the Bankruptcy Code has the equitable power and duty to examine the circumstances of the oversecured creditor in each particular case and consider notions of fairness and equity in determining whether to award default rate interest"). Here, both the Bankruptcy Judge and the District Court Judge evidently believed that Foster was "running up the tab" at the expense of others.

The Bankruptcy Court's modification of the interest awarded to Foster under § 506(b) was within its discretion and the parameters of the Code. Foster received interest on his claim until September 11, 2008, at which point the Bankruptcy Court tolled the interest due to "Foster's purposeful delay of the proceedings." (App. at 55.) Foster's purposeful delay can be fairly categorized as an "abuse of process," something that § 105(a) specifically empowers the Bankruptcy Court to address. The Bankruptcy Court's response – the tolling of interest – did not contravene the Bankruptcy Code and therefore was proper.[6]

## IV.    Conclusion

For the foregoing reasons, we will affirm District Court's order which, in turn, affirmed the order of the Bankruptcy Court.

---

[6] Because we conclude that, on this record, the indefinite tolling of interest was within the equitable power of the Court, Foster's passing argument concerning whether the pre-confirmation distribution was appropriate is moot, as Foster is entitled to no further interest and he was paid the judgment amount to which he was entitled. Thus, he stands whole and has no injury of which to complain. *See Spencer v. Kemna*, 523 U.S. 1, 18 (1998) ("We are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong.").