**In re Raymond E. SMITH, Debtor.**

**No. 10–14703 ELF.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Jan. 19, 2012.

Devon E. Sanders, Community Legal Services, Inc., Philadelphia, PA, for Debtor.

## MEMORANDUM

ERIC L. FRANK, Bankruptcy Judge.

### I. INTRODUCTION

The confirmed chapter 13 plan of Debtor Raymond E. Smith ("the Debtor") provides, *inter alia*, that the Debtor will procure a "reverse mortgage" on his residential real property and use the proceeds to pay off the existing mortgage on the property held by M & T Bank ("M & T").

Before the court is the Debtor's objection (the "Objection") to M & T's amended proof of claim, which is in the amount of $32,053.58. The Debtor bases his objection primarily on the ground that the claim improperly includes charges assessed after the entry of a pre-petition state court judgment in foreclosure. The Debtor also disputes the calculation of interest and the propriety of various legal expenses included in the claim. He asserts that the allowed claim should be only $24,987.81.

For the reasons set forth below, I conclude that the Objection is largely without merit. I find that M & T's claim should be allowed in the amount of $30,351.55, which includes post-petition interest through the date of confirmation of the Debtor's chapter 13 plan.

### II. PROCEDURAL BACKGROUND

The Debtor commenced this chapter 13 bankruptcy case on June 7, 2010. The Debtor's confirmed chapter 13 plan provides, as the "primary option" for treatment of the secured claim on his residence, as follows:

> The Debtor proposes to pay the allowed secured claims in full, by obtaining a home equity conversion mortgage (reverse mortgage) by application filed on or before his 62nd birthday on August 18, 2011. Debtor believes that his primary residence, 6246 N. Camac Street, Philadelphia, PA is of sufficient value to pay the claims even with any interest accruing.

(Debtor's Chapter 13 Plan ¶ 5) (Doc. # 18).

Dovenmuehle Mortgage, Inc. ("Dovenmuehle") filed a secured proof of claim in the amount of $30,758.37. On May 11, 2011, Dovenmuehle's assignee, M & T, filed an amended proof of claim in the

amount of $32,053.58 ("the Amended Proof of Claim"). On May 24, 2011, the Debtor filed the Objection to the Amended Proof of Claim. (Doc. # 50). M & T responded to the Objection on June 28, 2011. (Doc. # 56). On July 12, 2011, a hearing on the Objection was held and concluded. Both parties filed post-hearing memoranda in support of their positions, the last of which was filed on August 9, 2011. (Doc. # 's 68, 70).

## III. FINDINGS OF FACT

Neither party presented any witnesses at the hearing in this contested matter. Without objection, the Debtor introduced three (3) documents and M & T introduced two (2) documents into evidence. In addition to the documentary evidence, I have considered certain factual representations in the parties' post-hearing memoranda, but only to the extent that it is clear that the facts are not in dispute. I have also taken judicial notice of the court docket in *Dovenmuehle Mortgage, Inc. v. Smith*, March Term 2009, No. 1503 (C.P. Phila.). *See, e.g., In re Soto*, 221 B.R. 343, 347 (Bankr.E.D.Pa.1998) (a bankruptcy court may take judicial notice of the matters of record in the state courts within its jurisdiction).

Based on this record, I make the following findings:

### *the note and mortgage*

1. The Debtor is the owner of the residential real property located at 6246 N. Camac Street, Philadelphia, PA ("the Property"). (Ex. D–1).[1]

2. On June 3, 1994, the Debtor executed a note ("the Note") in the amount

of $44,000.00 payable to GMAC Mortgage Corporation of PA ("GMAC"). (*Id.*).

3. The Note provides for:

a. interest to accrue on the principal at a yearly rate of 7.375%;

b. the indebtedness to be repaid in monthly instalments of $404.77; and

c. the Note to mature on July 1, 2009.

(*Id.*).

4. The Note was secured by a mortgage on the Property ("the Mortgage"). (*Id.*).[2]

5. On or about January 17, 1995, GMAC assigned the Note to Dovenmuehle Mortgage Inc. ("Dovenmuehle"). (*Id.*).

### *the foreclosure action*

6. On March 10, 2009, Dovenmuehle instituted an action in mortgage foreclosure against the Debtor in the Pennsylvania Court of Common Pleas, Philadelphia County ("the CP Court"), docketed as *Dovenmuehle Mortgage, Inc. v. Smith*, March Term 2009, No. 1503 ("the Foreclosure Action").

7. On April 6, 2009, the Debtor filed an Answer to Dovenmuehle's Complaint in the Foreclosure Action.

8. By Order dated June 23, 2009 ("the CP Judgment"), the CP Court granted Dovenmuehle's motion for summary judgment.

9. The CP Judgment provides, in pertinent part:

judgment, *in rem*, shall be entered in favor of the Plaintiff and against Raymond Smith in the amount of *$23,573.41* (as calculated from the

---

1. Ex. D–1 is Proof of Claim No. 1–1, filed in this bankruptcy case by Dovenmuehle Mortgage, Inc. on August 30, 2010.

2. It appears that the entire Note, but only the first and last pages of the Mortgage are attached to Ex. D–1 (Dovenmuehle's Proof of Claim).

Complaint), *together with ongoing per diem interest, escrow advances, and any additional recoverable costs* to date of Sheriff's Sale; and for foreclosure and sale of the mortgaged property.

(Ex. M & T–2) (underline in original, bold and italics added).

10. Following the entry of judgment, Dovenmuehle filed a writ of execution and scheduled a sheriff's sale of the Property.

11. On motion of the Debtor, the CP Court postponed the sheriff's sale scheduled in November 2009 until December 1, 2009.

12. On November 30, 2009, the CP Court denied the Debtor's motion to strike the CP Judgment and to cancel or stay the sheriff's sale scheduled the next day.

13. On December 1, 2009, Dovenmuehle and the Debtor entered into a "Consent Agreement to Postpone Sheriff's Sale of December 1, 2009" ("the Consent Agreement"). (Ex. M & T–1).

14. The Consent Agreement provides, *inter alia,* for:

 a. the "confirm[ation]" of the $23,573.41 judgment arising from the CP Judgment dated June 23, 2009, "along with additional ongoing per diem interest, ongoing escrow advances (taxes and insurance) and any additional recoverable costs per the Mortgage, to the date of Sheriff's sale;" and

 b. the Debtor's waiver of any right to postpone or stay the March 10, 2010 sheriff's sale or any other Sheriff's sale.

(*Id.* ¶¶ 1, 6).

15. On Dovenmuehle's request, the CP Court postponed the March 2010 sheriff's sale to June 1, 2010.

16. On April 20, 2010, Dovenmuehle filed a motion to reassess damages in the Foreclosure Action, to which the Debtor responded on May 18, 2010.

17. The CP Court scheduled a hearing on the Motion to Reassess Damages for June 17, 2010.

18. For reasons not explained in the record, no sheriff's sale of the Property took place on June 1, 2010.

### *the bankruptcy filing*

19. On June 7, 2010, the Debtor commenced this bankruptcy case.[3]

20. On August 30, 2010, Dovenmuehle filed a secured proof of claim in the amount of $30,758.37 ("the Proof of Claim"). (Ex. D–1).

21. On March 25, 2011, M & T filed a Notice of Transfer of Claim pursuant to Fed. R. Bankr.P. 3001(e)(2), identifying M & T as the current holder of the Proof of Claim. (Doc. # 45).

22. On May 11, 2011, M & T filed the Amended Proof of Claim in the amount of $32,053.58. (Ex. D–2).

23. The Amended Proof of Claim itemizes the claim as follows:

| | |
|---|---|
| principal | $11,392.23 |
| interest through 6/7/2010 @ 7.35% [4] | 2,951.95 [5] |

---

3. The bankruptcy filing stayed the hearing on Dovenmuehle's Motion to Reassess Damages in the Foreclosure Action. *See* 11 U.S.C. § 362(a).

4. The interest rate in the Note is 7.375%, not 7.35%.

5. It is apparent that M & T calculated the interest component of its claim by assessing the contract rate of interest against the unpaid principal balance of the debt, not against the amount of the judgment entered in the Foreclosure Action. The Amended Proof of Claim expressly states that the per diem em-

| | |
|---|---|
| interest on unpaid principal over 36 month plan term | 1,341.50 |
| late charges | 404.46 |
| escrow advances | 8,402.44 |
| foreclosure legal fees | 4,180.00 |
| foreclosure costs | 3,031.50 |
| property inspection costs | 349.50 |
| **Total** | **$32,053.58** [6] |

24. On July 12, 2011, this court confirmed the Debtor's chapter 13 plan ("the Confirmed Plan"). (Doc. # 61).

25. The Confirmed Plan provides for the Debtor to pay M & T's allowed secured claim in full "by obtaining a home equity conversion mortgage (reverse mortgage) by application filed on or before his 62nd birthday on August 18, 2011." (Confirmed Plan ¶ 5) (Doc. # 18).

26. In its Memorandum of Law following the hearing on the Objection, M & T revised its payment demand, effectively further amending the Amended Proof of Claim and itemizing its claim as follows:

| | |
|---|---|
| judgment in the Foreclosure Action | $23,573.41 |
| interest to the date of the bankruptcy filing @ 7.35% [7] | 891.74 [8] |
| sheriff's costs | 1,500.00 |
| affidavit of service per Pa. R. Civ. P. 3129.1 | 58.38 |
| service of notice | 65.00 |
| bringdown | 125.00 |
| skip/trace search | 35.00 |
| costs to stay sheriff's sale | 200.00 |
| writ | 15.00 |
| affidavit of service per Pa. R. Civ. P. 3129.1 | 17.16 |
| foreclosure fees | 1,925.00 |
| escrow advances | 1,395.18 |
| **Total** | **$29,800.87** |

ployed is $2.30, which is the per diem interest on the unpaid principal of $11,392.23 at 7.375% per year (the interest rate set forth in the Note, not the 7.35% rate stated in the Amended Proof of Claim).

6. The difference between the Dovenmuehle Proof of Claim and the M & T Amended Proof of Claim is attributable entirely to increased "foreclosure legal fees" and "foreclosure legal

## IV. DISCUSSION

### A. *In re Stendardo* and the Doctrine of Merger

The Debtor's lead argument is that the Amended Proof of Claim is overstated based on a fundamental flaw in M & T's calculation methodology. The Debtor bases his argument on *In re Stendardo*, 991 F.2d 1089 (3d Cir.1993).

■ In *Stendardo*, the Third Circuit applied the doctrine of merger under Pennsylvania law and held that after the entry of a foreclosure, the terms of a mortgage are merged into the foreclosure judgment and the mortgage no longer provides a basis for determining the respective rights and obligations of the parties. Because the foreclosure judgment constitutes a "new and higher" obligation, mortgage provisions relating to items such as the interest rate and the borrower's obligation to reimburse the lender for advances for taxes and insurance are superseded by the judgment and are no longer operative. *Id.* at 1098. The merger doctrine, however, is subject to an exception: a provision of a mortgage may survive the entry of judgment if the mortgage clearly evidences the parties' intent to preserve the effectiveness of that provision even after the entry of judgment. *Id.* at 1095; *see also In re Phillips Group, Inc.*, 382 B.R. 876, 883 (Bankr.W.D.Pa.2008).

Relying on *Stendardo*, the Debtor contends that M & T's claim should be calcu-

costs." Otherwise, the itemization of the two claims is identical.

7. Again, the interest rate should have been identified as 7.375%.

8. This calculation again represents the application of the per diem interest of $2.30 applied to the unpaid principal of $11,392.23. *See* n.5, *supra.*

lated solely by adding interest at the legal rate (6%)[9] to the judgment entered in June 2009. Because the Amended Proof of Claim includes post-judgment interest at the contract rate (7.375%), post-judgment escrow advances for taxes and insurance and additional legal expenses, the Debtor contends that these additional charges should be disallowed. While the Debtor has not done the arithmetic, application of *Stendardo* would reduce M & T's Amended Proof of Claim, as filed, by $7,065.77, from $32,053.58 to $24,987.81.[10]

M & T responds with two arguments. First, M & T contends that, regardless of the terms of the Mortgage, the judgment entered in the CP Court permits M & T to recover interest at the contract rate and escrow advances through the date of a sheriff's sale and that the bankruptcy court is bound by that judgment under the *Rooker–Feldman* doctrine.[11] Second, M &

T asserts that the Proof of Claim is properly calculated based upon the Consent Agreement, in which the Debtor "confirmed" the judgment "along with any additional ongoing per diem interest, ongoing escrow advances (taxes and insurance) and any additional recoverable costs per the Mortgage to the date of Sheriff's sale." (Ex. M & T–1 ¶ 1).

■ Although I reject M & T's *Rooker–Feldman* argument,[12] I agree with its ultimate conclusion: that the merger doctrine is not applicable to the extent that the parties' post-judgment Consent Agreement is inconsistent with the doctrine. By entering into the Consent Agreement (in consideration for M & T's agreement to postpone the December 2009 sheriff sale), the Debtor effectively waived the benefits of the merger doctrine and reaffirmed the terms of the CP Judgment.[13] *See* Finding

9. The legal rate of interest in Pennsylvania is 6%. *Compare* 42 Pa.C.S. § 8101, *with* 41 P.S. § 202.

10. Approximately one year passed from the entry of the CP Judgment (*i.e.*, the foreclosure judgment) to the bankruptcy filing. Therefore, I calculate the prepetition claim using the Debtor's methodology as follows: $23,573.41 + (.06 × $23,573.41) = $24,987.81.

11. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159 (3d Cir. 2010).

12. Because the *Rooker–Feldman* doctrine goes to the court's subject matter jurisdiction, *see e.g., Turner v. Crawford Square Apts. III, L.P.*, 449 F.3d 542, 547 (3d Cir.2006), I am obliged to consider the merits of M & T's argument. *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *In re Mullarkey*, 536 F.3d 215, 220–21 (3d Cir.2008). As a general matter, I fail to see how any credible argument can be made that the bankruptcy court lacks subject

matter jurisdiction over an objection to a proof of claim. *See* 28 U.S.C. § 1334(b). M & T's argument is a classic example of a party confusing the *Rooker–Feldman* doctrine with the doctrines of res judicata and collateral estoppel. More specifically, employing the analytic framework articulated by the Third Circuit in *Great Western Mining*, the Debtor's Objection to the Amended Proof of Claim does not fall within the four prongs of the *Great Western Mining* test. The Objection does not require this court to "reject" the judgment entered in the Foreclosure Action. Rather, the Objection requires only that the court interpret the meaning of and apply the judgment in order to determine M & T's allowed claim. For a more fulsome discussion of the *Rooker–Feldman* doctrine in this circuit after *Great Western Mining*, *see In re Sabertooth, LLC*, 443 B.R. 671, 679–82 (Bankr. E.D.Pa.2011).

13. The CP Judgment included provisions that may not have been entirely consistent with the merger doctrine. Also, it is not clear whether the Consent Agreement modified the judgment in some fashion. However, I find it is unnecessary to decide those questions. The Consent Agreement, which was designed by the parties to establish the principles for cal-

of Fact No. 14. The Debtor has presented no argument why the Consent Agreement should not be applied according to its express terms. Therefore, in determining M & T's pre-petition claim, the Consent Agreement, the Note and the Mortgage must be considered in calculating what sums must be added to the amount of the foreclosure judgment. In the balance of the Memorandum, I resolve several other issues that arise in making this calculation.

## B. Calculation of Post–Judgment, Pre–Petition Interest

### 1. the effect of the maturation of the Note in July 2009

The Debtor contends that even if M & T has an ongoing right to interest based on the Note, the rate of interest should drop from 7.375% to 6% after July 1, 2009, the maturity date of the Note. I agree.

Paragraph 1 of the Consent Agreement refers to M & T's right to *"per diem "* interest. While that term is undefined in the Agreement, it undoubtedly refers to M & T's right to interest as provided in the loan documents; M & T does not contend otherwise. The question then, is what, if anything, do the loan documents provide regarding the post-maturity interest rate?

Paragraph 26 of the Mortgage [14] states that the interest rate payable after judgment "shall be the rate payable from time to time under the Note." In Paragraph 2 of the Note, the Debtor agreed that interest on the unpaid principal would be charged "until the full amount of principal has been paid" and that the annual interest rate would be 7.375%.

culating the total balance of the outstanding debt, is the most recent expression of the parties' intentions, and therefore, controls. My calculation of M & T's claim is based on my interpretation of the Consent Agreement.

At first blush, one might think that the reference in Paragraph 2 of the Note to the payment of 7.375% interest "until" all of the principal interest has been "paid" would extend the contract rate beyond the maturity date of the (unpaid) Note. However, under Pennsylvania law, the phrase "until paid" has an understood meaning in this context and refers to the maturity date of the Note. As one court explained:

> When notes provide for an interest rate of other than the legal rate of 6%, "such rate applies up to maturity of the notes, and words 'until paid' relate to such maturity, and thereafter the legal rate of 6% will prevail."

> The parties can by mutual consent agree to other terms for the rate of interest after maturity but such language must clearly appear in the instrument itself ... (citation omitted) In the absence of an express agreement to the contrary, the legal rate of interest applies from the date of maturity irrespective of the rate prescribed in the instrument for the period prior to maturity.

*In re Dilts,* 143 B.R. 644, 646 (Bankr. W.D.Pa.1992) (quoting *Wright v. Hanna,* 210 Pa. 349, 59 A. 1097 (1904)).

■ Based on *Dilts* and the text of the Note, I conclude that after July 1, 2009, the maturity date of the Note, the annual interest rate on the unpaid principal balance of the Note dropped from 7.375% to 6%. Consequently, M & T's calculation of the prepetition interest that accrued on the judgment in the approximate one year period from the maturity of the Note and the filing of this bankruptcy case is overstated by 1.375%.

**14.** Fortunately, Paragraph 26 is included in the incomplete record.

### 2. is the interest rate applied to the unpaid principal balance or the judgment amount?

The next question is whether the 6% interest rate should be assessed against the amount of the foreclosure judgment ($23,573.41) or the unpaid principal balance ($11,392.23).

▮ Ordinarily, interest on a claim reduced to judgment pre-petition is calculated by applying the interest rate against the full amount of the pre-petition judgment. *See In re Yorke*, 1996 WL 432422, at *1 (Bankr.E.D.Pa. July 30, 1996). However, in all of their filings with the court, Dovenmuehle and M & T have treated their entitlement to *"per diem* interest," as that term is used in the Consent Agreement, to refer to interest on the unpaid principal balance of the Mortgage, not interest on the CP Judgment. Because that methodology results in a lower *per diem*, I infer that their actions are consistent with the parties' intentions in entering into the Consent Agreement. *See Restatement (Second) of Contracts* §§ 202(4), (5) (West 2011). In effect, just as the Debtor waived certain benefits of the merger doctrine in entering into the Consent Agreement, so too did Dovenmuehle.

Pursuant to the Consent Agreement, I conclude that the accrual of post-judgment, pre-petition interest on the CP Judgment should be calculated by applying the appropriate interest rate to the unpaid principal balance of the Note, not to the entire amount of the CP Judgment. Based on this methodology, I calculate the post-foreclosure, pre-petition interest charges to be $701.93. I obtain this figure by adding:

(a) the amount of the interest that accrued from the date of the entry of the CP Judgment to the date of the maturity of the Note ($2.30 × 8 (eight) days @ 7.375% = $18.40); and

(b) the amount of interest accruing in the one (1) year the period from the maturity of the Note to the date of the filing of the bankruptcy petition ($11,392.23 × 6% = $683.53).[15]

### C. Post–Petition, Pre–Confirmation Interest

The Debtor further objects to the post-petition interest charge of $1,341.50 included in M & T's Amended Proof of Claim. He contends that interest should not run for 36 months "when the plan proposes to pay the claim in full prior to the expiration of the 36 month ... period." (Debtor's Memorandum of Law at 8). While I do not accept the Debtor's reasoning or any suggestion that no post-petition, pre-confirmation interest is allowable,[16] I agree

---

**15.** Because I infer that the CP Judgment in the Foreclosure Action included an award of interest to M & T for all post-default, pre-judgment interest that accrued prior to the entry of the CP Judgment, I will not include interest for that time. I make this inference based on the fact that the CP Judgment is entered in the amount of $23,573.41 while the complaint in the CP Court sought a judgment for only $23,186.50. Although the CP Judgment does not include a breakdown of how the final figure is calculated, the difference in the two numbers equals approximately a $2.30 *per diem* rate of interest for the 105 days from the entry of the Foreclosure Action against the Debtor to the date that the CP Judgment was entered.

**16.** In support of his position, the Debtor articulates an argument that is somewhat contradictory. On the one hand, by suggesting that post-petition interest should not run for the 36 month term of the plan because the claim will be paid off earlier, the Debtor does not appear to dispute that satisfaction of M & T's claim requires payment of post-petition interest that accrues until the claim is actually paid in full. On the other hand, the Debtor also contends that "[a]s a foundational matter, interest over the life of the plan is not

that M & T's methodology for calculating post-petition interest is flawed.

■ If a creditor's secured claim is "oversecured," post-petition, pre-confirmation interest may be allowed as part of a proof of claim. *See* 11 U.S.C. § 506(b) ("To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be *allowed* to the holder of such claim, *interest* on such claim . . . .") (emphasis added); *see also In re Nixon,* 404 Fed.Appx. 575, 578–79 (3d Cir. Dec. 15, 2010) (nonprecedential).

■ In this case, it does not appear that the Debtor disputes that the value of the Property exceeds M & T's claim.[17] Therefore, § 506(b) is applicable and post-petition, pre-confirmation interest may be allowed as part of M & T's claim.[18] *See, e.g., In re Garner,* 663 F.3d 1218, 1219–20 (11th Cir.2011).

In determining the amount of post-petition interest allowable under § 506(b), most courts employ the rate of interest applicable under the parties' contract. *See, e.g., Garner,* 663 F.3d at 1220; *South Canaan Cellular Investments,* 427 B.R. at 77–78. As explained in Part IV.B.1, *supra,* in this case, involving a matured loan note, the proper interest rate is 6%.

Another issue arises however. Just as it was necessary to decide whether the post-judgment, pre-petition interest rate should be applied to the entire amount of the foreclosure judgment or the (lower) unpaid principal balance, the same issue arises with respect to post-petition, pre-confirmation interest allowable under § 506(b).

■ Based on the parties' agreement—the Consent Agreement, which I consider to be the parties' "contract" for purposes of § 506(b)—I resolve M & T's entitlement to post-petition, pre-confirmation interest in the same manner as its entitlement to post-judgment, pre-petition interest. M & T is entitled to § 506(b) interest by applying the interest rate to the unpaid principal balance, not the entire judgment. Further, there is authority suggesting that the court may have some discretion in determining the appropriate amount of interest to be added to a claim under § 506(b). *See In re Milham,* 141 F.3d 420, 423–24 (2d Cir.1998). To the extent that I have discretion, I exercise it by applying the legal rate of interest (6%) against the unpaid principal balance component of the claim, rather than the entire claim, consistent with the methodology of the Consent Agreement. *See generally Nixon,* 404 Fed.Appx. at 578–79 (affirming

---

properly a component of the allowed secured claim." (Debtor's Memorandum of Law at 8).
 As explained above in the text that follows this footnote, the Debtor's statement that post-petition interest is never part of an allowed secured claim is overly broad.

**17.** The Debtor's position is evident from two sources. First, the Debtor listed the value of the Property in his Schedule A as $162,000.00, an amount far in excess of M & T's Amended Proof of Claim. Second, the Debtor would not be proposing a chapter 13 plan funded primarily by the proceeds of a reverse mortgage if he did not believe that he had substantial equity in the Property.

**18.** As a condition of confirmation of a chapter 13 plan that provides for satisfaction of an allowed secured claim, "present value" interest on the allowed secured claim must be paid *after* confirmation of the plan. *See* 11 U.S.C. § 1325(a)(5)(B)(ii); *see also In re South Canaan Cellular Investments, Inc.,* 427 B.R. 44, 77–78 (Bankr.E.D.Pa.2010). However, the "present value" confirmation requirement, technically, is not considered part of the creditor's bankruptcy "claim" and would be addressed in the debtor's plan.

bankruptcy court's exercise of discretion in allowing interest under § 506(b)).

Therefore, M & T is entitled to $740.49 in post-petition, pre-confirmation interest for the thirteen (13) months between the petition date and confirmation of the Debtor's chapter 13 plan ($11,392.23 × 6% × 13 months/12).[19]

### D. Fees and Costs

The Consent Agreement also provides that the Debtor is responsible for all costs recoverable under the Mortgage. There is no dispute that the Debtor is responsible for reasonable legal fees and costs that M & T incurred in the Foreclosure Action. However, the Debtor disputes that most of the legal fees and costs itemized by M & T are an allowable component of its claim. *See* Finding of Fact No. 26. The Debtor agrees that M & T is entitled to reimbursement of $1,565.00: $1,500.00 for sheriff's deposit and $65.00 for the notice of sale, both of these expenses being fees paid to the sheriff's office in connection with the execution on the foreclosure judgment. The Debtor disputes the balance of claimed legal expenses, asserting that M & T has not met its burden of proof.

I find that all of the claimed expenses are allowable.

In the Consent Agreement, the Debtor confirmed his obligation to pay "any additional recoverable costs per the Mortgage." (Ex. M & T–1, Consent Agreement ¶ 1). The Mortgage secures the Note,

which provides that "the Note Holder will have the right to be paid back ... for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses, include, for example, reasonable attorney's fees."[20] (Note ¶ 6(E)).

The Debtor presented no evidence in support of his challenge to the claimed legal expenses. Thus, the outcome of the dispute depends upon which party has the burden of proof.

As recently summarized in *In re Wells*, 2011 WL 6938355, at *4 (Bankr.E.D.Pa. Dec. 28, 2011) (footnotes omitted):

> A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). If properly filed, *see* Fed. R. Bankr.P. 3001(c), a proof of claim is *prima facie* evidence of the validity and amount of the claim, even if an objection is filed. *See* Fed. R. Bankr.P. 3001(f). In other words, "if a proof of claim complies with the Rules of Court and is self-sustaining (*i.e.*, it sets forth the facts necessary to state a claim and is not self-contradictory), it is *prima facie* valid and the objecting party has the burden of producing evidence to refute the claim." *In re Sacko*, 394 B.R. 90, 98 (Bankr.E.D.Pa.2008). That evidence, "if believed, [must] refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir.1992). If the objector meets that

---

**19.** I note that post-confirmation interest may be another matter. After confirmation, M & T is entitled to payment of the present value of its "allowed secured claim." *See* 11 U.S.C. § 1325(a)(5)(B)(ii). Therefore, after July 12, 2011, interest (at the rate that would provide M & T with the present value of its claim) accrues, presumably on the entire $30,351.55 claim. However, M & T's entitlement to post-confirmation interest issue is not presented in this contested matter.

**20.** I point out again that the entire Mortgage is not part of the record. The pages that are in the record include only the preamble and paragraphs 23–27. While I do not know with certainty that the Mortgage includes a "fee-shifting" provision, experience suggests that it does. More importantly, the Debtor has not contested the proposition that he has the contractual obligation to reimburse M & T for its reasonable attorney's fees and costs.

burden of production, the claimant must produce evidence to prove the validity of the claim, *id.* at 174, because "the ultimate burden of persuasion is always on the claimant," *In re Holm*, 931 F.2d 620, 623 (9th Cir.1991).

In *Sacko*, I considered how the general principles described above should be applied in considering an objection to a proof of claim based on a residential mortgage. I concluded that:

- to the extent that a claim for mortgage arrears includes different components with different sources of proof, each component should be analyzed separately when applying the burden of proof principles articulated in Rule 3001(f);

- Rule 3001(c)'s requirement that a claimant attach the writing on which a claim is "based" need not be read expansively to encompass all of the relevant documents that might be produced in discovery in ordinary civil litigation to support the claimant's entitlement to each component of the mortgage arrears claim, but is limited to the documents that generally give rise to the claimant's right to payment (the note and mortgage); and

- given the conservative application of the requirements of Rule 3001(c) as stated above, it is appropriate to employ an elastic approach in evaluating whether the objector has met the burden of production under Rule 3001(f).

*Sacko*, 394 B.R. at 100.

In *Sacko*, I also elaborated on the "elastic" approach in determining whether the objecting party has met its burden of production:

[A]n objector should be able to meet its burden of production and overcome the claimant's Rule 3001(f) *prima facie* case by either generating its own evidence directly rebutting the validity of the charges claimed *or* by demonstrating that the claimant has not responded to *formal or informal* requests for documentation or other evidence supporting the amount, reasonableness or other factors relevant to the validity of the charges at issue ... [A] creditor's lack of adequate response to a debtor's formal or informal inquiries in itself may raise an evidentiary basis to object to the unsupported aspects of the claim thereby coming within Section 502(b)'s grounds to disallow the claim.

*Sacko*, 394 B.R. at 100–01 (quotation marks and citations omitted; underline added, italics in original).

 Applying the foregoing principles in this contested matter, I conclude that M & T's has established a *prima facie* case for the allowance of its legal expenses. The writings upon which the claimed expenses are based (the Consent Agreement, the Mortgage and the Note) were all attached to the Proof of Claim or offered into evidence at the hearing. Further, all of the specific charges at issue fall within the categories of allowable expenses set forth in the Consent Agreement, the Mortgage and the Note. Consequently, the Debtor bore the burden of producing some evidence to refute the validity of the claimed expenses.

 The Debtor failed to meet his burden of production because he neither offered any contradictory evidence regarding the claimed legal expenses nor demonstrated that M & T failed to respond to formal or informal requests for information to verify the validity of the claimed legal expenses. The Debtor merely argued that M & T failed to produce receipts or offer testimony. Under 11 U.S.C. § 502(a), Rule 3001 and *Allegheny Int'l*, such an argument is insufficient and M & T's legal expenses will be allowed.

### E. Calculation of Proof of Claim

Based upon the analysis above, I find that M & T's Proof of Claim should be allowed, including interest through July 12, 2011, the date of confirmation of the Confirmed Plan, in the amount of $30,351.55.

The calculation of the Allowed Claim is set out below:

| | |
|---|---|
| judgment in the Foreclosure Action | $23,573.41 |
| interest to the date of the bankruptcy filing | 701.93 [21] |
| post-petition interest (June 2010 to July 2011) @ 6% | 740.49 [22] |
| sheriff's costs | 1,500.00 |
| affidavit of service per Pa. R. Civ. P. 3129.1 | 58.38 |
| service of notice | 65.00 |
| bringdown | 125.00 |
| skip/trace search | 35.00 |
| costs to stay sheriff's sale | 200.00 |
| writ | 15.00 |
| affidavit of service per Pa. R. Civ. P. 3129.1 | 17.16 |
| foreclosure fees | 1,925.00 |
| escrow advances | 1,395.18 |
| **Total** | **$30,351.55** |

## V. CONCLUSION

For the reasons set forth above, the Debtor's objection to M & T's Amended Proof of Claim will be sustained in part and overruled in part. An order consistent with this Memorandum will be entered.

### ORDER

**AND NOW,** upon consideration of the Debtor's Objection to the Amended Proof of Claim of M & T Bank, and after a hearing, and for the reasons stated in the accompanying Memorandum,

It is hereby **ORDERED** that:

1. The Objection is **SUSTAINED IN PART AND DENIED IN PART.**

2. Claim No. 1–2 is **ALLOWED** as a secured claim, as of the effective date of the Debtor's confirmed chapter 13 plan, in the amount of **$30,351.55.**

---

**21.** This amount includes a calculation of interest at 7.375% from the foreclosure judgment to the date of maturity of the Note and a calculation of interest at 6.0% from the date of maturity of the Note to the date of the filing of the bankruptcy petition. *See* Part IV.B.2., *supra.* Also, consistent with that same discussion, although the base amount of the claim is the CP Judgment amount, the interest is calculated on the unpaid principal, not the liquidated foreclosure judgment.

**22.** *See* Part IV.C, *supra.*